IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James Brown, III, | Case No.: 3:24-cv-00007-SAL |
| Plaintiff, | |
| v. | **ORDER** |
| Leon Lott, *as Representative for the Richland County Sheriff's Department*; Officer Chris S. Cowan, *individually and in his official capacity*; Tiyana Henley, *individually and in her official capacity with Richland County Recreation Commission*, | |
| Defendants. | |

Plaintiff James Brown, III ("Brown") brings this action against Leon Lott, as representative for the Richland County Sheriff's Department ("RCSD"), and Officer Chris S. Cowan ("Officer Cowan") (collectively "RCSD Defendants"), as well as Tiyana Henley ("Henley"), an employee of the Richland County Recreation Commission ("RCRC"). Brown originally sued in state court, alleging claims for false arrest, abuse of process, malicious prosecution, negligent hiring, training and supervision, and general claims of negligence. He also alleged violations of his Fourth Amendment rights under 42 U.S.C. § 1983. Defendants subsequently removed this action to federal court. They now move for summary judgment, which Brown opposes. ECF Nos. 36, 37, 38, 40.

United States Magistrate Judge[1] Shiva V. Hodges, pursuant to 28 U.S.C. § 636(b) and

---

[1] The court notes that throughout Brown's filings, Judge Hodges is repeatedly referred to as "Magistrate" or "the Magistrate." This is a common but outdated usage.

As explained in *Bird v. NASA*:

1

Local Civil Rule 73.02(B)(4) (D.S.C.), issued a Report and Recommendation, recommending Defendants' motions be granted. [ECF No. 46.] Brown objects to the recommendation. [ECF No. 50.]

For the reasons below, the court adopts the Report and grants Defendants' motions for summary judgment, ECF Nos. 36, 37.

## LEGAL STANDARDS

### I.     Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the

The title magistrate no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in 1990. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, § 321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge.") It is an important distinction . . . . *See United States v. Higby*, No. 4:15CR0142 JAJ, 2015 WL 13914071 (D.C. Ia. Dec. 2, 2015).

2022 WL 90515, at n.1 (S.D. Tex. Jan. 7, 2022).

"[T]he role of the [magistrate judge] in today's federal judicial system is nothing less than indispensable." *Gov't of Virgin Islands v. Williams*, 892 F.2d 305, 308 (3d Cir. 1989). As this change was implemented more than three decades ago, Brown is gently reminded to use the correct title when referring to judicial officers of this court.

Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But "[i]n the absence of *specific* objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009) (emphasis in original).

## II.     Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## BACKGROUND

On February 27, 2025, the magistrate judge issued a comprehensive Report and Recommendation, which details the relevant facts and legal standards. The court incorporates those facts and standards by reference. At the same time, due to the fact-intensive nature of the dispute, some recitation is necessary.

### I.  Overview

Brown served as the Executive Director of the RCRC from 2009 until he was terminated on October 12, 2016, following an indictment for misconduct in office. [ECF No. 37-1 at 22:14–23.] The indictment alleged Brown used his position "to coerce and attempt to coerce female employees into having sexual contact with him." [ECF No. 37-2 at 3.]

The next day, October 13, 2016, Brown, accompanied by counsel, was interviewed by Agent Aaron Hawkins from the Federal Bureau of Investigation ("FBI") and Agent Greg Antley from the South Carolina Law Enforcement Division ("SLED") [ECF No. 37-1 at 355:6–13, 358:7–359:24, 362:12–24.] They questioned him for several hours on the allegations by RCRC employees. *Id.*

The crux of this case centers on events that occurred the next day, October 14, 2016. That morning, Brown visited the Tennis Complex on RCRC property and allegedly confronted Henley, a cooperating witness. Afterward, he was stopped by Officer Cowan. Information from Henley's account of the incident formed the basis for Brown's arrest warrant and subsequent prosecution on a charge of witness intimidation—a charge that was later dismissed. Brown alleges that his arrest and prosecution were unlawful.

### II.  Events of October 14, 2016

On the morning in question, Brown arrived at the RCRC Tennis Center on Parklane Road.

4

Henley, who was alone at the time, testified that she saw Brown's car on the surveillance cameras and contacted fellow RCRC employee Cornelia Watts. Henley stated she was alarmed because Brown had no reason to be there, and she feared for her safety. According to Henley:

> He walked in and he asked whether I was cooperating with the government, and I told him yes. He said, "Well, I can't say anything to you, but you better leave my brother Jeff alone" and walked out.

[ECF No. 41-2 at 22:10–22, 28:18–22.][2]

Henley explained that, based on prior behavior and office rumors that Brown "would like to go around intimidating folks," she feared for what might happen and asked Watts to call law enforcement. *Id.* at 28:25–30:25, 88:17–21. In a later written statement, Henley recounted the same sequence of events and further explained her concern: "I have been hearing that he has been coming after everyone cooperating in the investigation and that I have known him to carry a gun . . . He made that well known in the office." [ECF No. 41-3 at 10–13.] Although Henley admitted she had never seen Brown with a firearm, she claimed he often boasted about carrying one. She perceived his tone during the encounter as "threatening" and "rattling," suggesting anger. *Id.* Henley testified in her deposition, that she wanted Brown arrested for showing up at the Tennis Center that day. [ECF No. 41-2 at 92:1–6.]

### A. Brown's Interaction with Officer Cowan

Officer Cowan testified that he was aware the FBI was investigating Brown, that Agent Hawkins was leading the investigation, and that he and Hawkins had a professional relationship and prior interactions. [ECF No. 37-3 at 90:9–18.] Hawkins had informed Officer Cowan about

---

[2] Brown testified that he believed "there was a campaign by various people against members of [his] family to target them and single them out and hurt them," and that he spoke with Henley about her interactions with his brother, Jeff. [ECF No. 37-1 at 63:1–9, 70:7–22.] He further explained, that Jeff "had [gotten] written up for something that wasn't [] grounds for discipline" and that "was the only reason" for his conversation with Henley. *Id.*

Brown and the allegations against him. *Id.* at 90:19–22. Officer Cowan also testified that, before this incident, he had been contacted by individuals at RCRC regarding Brown's inappropriate conduct and that he had previously worked with RCRC Chief of Staff Tara Dickerson ("Dickerson") whom he considered trustworthy. *Id.* at 90:23–91:18.

Dickerson provided a statement regarding the events of that morning. She stated:

> At approximately 9:22[3] I had an employee enter my office saying Mr. Brown is in the parking lot at the Tennis Center, can you please call someone or do something quick. I picked up the phone and called Major Chris Cowan with the RCSD and told him that an employee notified me that Mr. Brown was in the parking lot at the Richland County Tennis Center and asked that he send someone immediately. Major Cowan stated that he was on his way and would also send someone else . . . . The employee that he spoke with at the Tennis Center stated that Mr. Brown entered the building and asked her "are you cooperating with the government also" and she replied "yes." Then Mr. Brown said "well I can't say nothing to you," "but ya'll need to leave Jeff alone." The employee then told Mr. Brown, "you need to tell Jeff to leave me alone.'' Then Mr. Brown said, "well I am only hearing one side" and "If you are cooperating with the government, I can't say anything to you." Then Mr. Brown turned and left.

[ECF No. 41-3 at 8.]

Officer Cowan's case summary describes his and RCSD Major Kelvin Ashe's ("Ashe") response as follows:

> [Responding Officer] ("R/O") responded to a telephone call from the Recreation Commission stating that James Brown was on Recreation Property questioning employees about their participation in the FBI investigation into his actions against the employees. R/O was told specifically that they knew that Brown was in possession of weapons (that he had told them he carried them in his car and had seen them on his person when he was employed at RCRC). R/O was told that Brown was confronting employees and specifically asking them if they were witnesses against him. R/O notified the Regional supervisor to have deputies patrol the area looking for Brown and Major Ashe was in the area and met R/O on scene at the Tennis courts. R/O and Major Ashe interviewed Tiyara [Henley] on scene and she stated that she was deathly afraid of Brown and that he had showed up

---

[3] Documentation from Cowan suggests that Dickerson called RCSD between 8:30 a.m. and 9:10 a.m. [*See* ECF No. 37-3 at 88:9–21, 103:4–104:25.] Even assuming, however, that the call took place at 9:22 a.m., Cowan's prompt arrival at the RCRC facility is consistent with his immediate response that he was "on his way." [ECF No. 41-3 at 8.]

quizzing her on what she told the FBI and if she was informing on him.

[ECF No. 41-3 at 3–4.]

Following this interview, at around 9:38 a.m., Officer Cowan located Brown driving 4–5 blocks from the Tennis Center. [ECF No. 37-1 at 76:6–14, *see also* ECF No. 38-4 at 13.] Officer Cowan testified he stopped Brown because "we had individuals that were involved in an FBI investigation, and citizens that were scared for their lives, and that would have been enough under the law for me to stop him and investigate and find out what happened and what his take was." [ECF No. 36-9 at 24:12–19.]

Brown testified regarding the interaction as follows:

Q: He gets behind you, puts on blue lights?

A: Yes.

Q: And you pull over in the center median, right?

A: Right.

Q: He comes up to your car. What's the first thing he says to you?

A: He asked me about whether I stopped down, talked to Ms. Henley, and I told him yes . . . Then I got—he asked me to get out of the car. I got out of the car . . . I was getting ready to get my license and I was standing there and he was walking away back to his vehicle. Then he went in there and had me stand behind . . . the car with my documents and he took the picture . . . . After that he let me go.

Q. Okay. How long was this interaction?

A. It was very—it might have been five to seven minutes maybe. It wasn't long.

Q: Okay. Were you ever in handcuffs?

A. No, sir.

[ECF No. 37-1 at 80:9–25, 116:1–13.]

Officer Cowan's case summary of the traffic stop states:

R/O and Major Ashe located Brown a short time later on Parklane Road seeing him driving in and around the Recreation Properties on Parklane Road. R/O conducted a traffic stop on Brown, asking him where he was traveling to and from. It was determined that he had indeed made contact with several employees and asked questions of them about the investigation. He was told that he was not supposed to be on RCRC property in the past or in the future and that he need not contact any employee of RCRC that he should go through his attorney for any and all issues (including the one about his retirement that he brought up during the traffic stop).

[ECF No. 41-3 at 4.]

At 10:07 a.m., Officer Cowan emailed Hawkins describing the events:

On October 14, 2016 Mrs. Tara Dickerson called me very agitated due to the fact that Mr. Brown had been seen on the property of the Tennis Center. She stated that she does not want him on the property due to the safety risk to the employees and it was her understanding that his attorney had told him not to be on the properties.

Myself and Major Ashe went directly to the center and found Ms. [Henley] who stated that Brown had confronted her and questioned her about her being a witness in the pending case. She advised that he left in a silver Nissan sports car. She was asked to call RCSO at any time if he was seen in or around the area and that RCSO would continue to check on the Recreation properties and employees.

I located Mr. Brown driving on Parklane Road and made contact with him. He was in possession of a handgun (in his center console), concealed weapons permit and SCDL. He admitted to going by and making contact with Ms. [Henley] and questioning her about the case. He specifically stated that he asked her if she "is a government witness." He also admitted to having called several employees this morning; stating that he did so for retirement reasons.

At 9:42 AM I informed Brown that he is not to call any employees or visit any Recreation Facility. That all correspondences should go through his attorney.

[ECF No. 41-3 at 7.]

### B.  Arrest Warrant for Intimidation

The matter was then referred to the RCSD Criminal Investigative Division. After completing the investigation, Officer Cowan obtained Arrest Warrant 2016A4010900481 against Brown for intimidation of court officials, jurors, or witnesses. [ECF No. 36-6.]

In the warrant, Officer Cowan swore to the following:

> That on or about 10/14/16 while at 7500 Parkland Road in the Dentsville Magisterial District of Richland County, it is believed that the defendant did commit the crime of Intimidation of a State's Witness because after the defendant was criminally indicted, approached the victim and other employees in a threatening manner and while knowing that he could not speak with them while aware of the criminal investigation against him. He approached her uninvited, in a threatening tone asked her if she was cooperating with the government. The victim was aware that he normally carries a handgun and perceived him as being angry and approached her as close as possible to convey his threat. RCSD deputies responded and stopped him a short distance away as he possessed a weapon in his vehicle. The victim has provided RCSD Investigators with a sworn statement.

[ECF No. 36-6 at 2–3, *see also* ECF No. 41-3 at 5–6.]

The South Carolina Attorney General then prosecuted this charge for over five years. [ECF No. 41-3 at 1.] On November 4, 2021, Brown was acquitted of the Third-Degree Criminal Sexual Conduct charge. [ECF No. 41-4.] Henley testified at Brown's trial, giving the same account she provided to the FBI and RCSD. [ECF No. 41-2 at 55:11–18.] On December 6, 2021, the Attorney General dismissed the Intimidation of a Witness charge citing the reason as "Acquitted on other charge." [ECF No. 41-3 at 1.]

## OBJECTIONS

With the factual background addressed, the analysis turns to the legal issues. As previously noted, all prior proceedings were referred to a magistrate judge for preliminary administration. After the parties fully briefed the pending motions for summary judgment, ECF Nos. 36, 37, the magistrate judge issued a Report recommending summary judgment for Defendants. The magistrate judge methodically recited the facts in the light most favorable to Brown. [ECF No. 46 at 2–14.] Then, applying the law to those facts, the magistrate judge concluded as follows: (1) a reasonable jury could not find Officer Cowan lacked reasonable suspicion to conduct a *Terry* stop based on the information he knew at the time, *id.* at 15–19; (2) even "correcting" the warrant, a reasonable jury could not find Officer Cowan lacked probable cause to arrest Brown on the charge

of intimidation of a state's witness, and Officer Cowan was further entitled to qualified immunity, *id.* at 19–27; and (3) there was no genuine issue of material fact as to the state-law claims based on Officer Cowan's actions in detaining and arresting Brown, *id.* at 27–28.

Brown timely filed objections to the Report. In his filing, he broadly states that he "files objections to the entire Report and Recommendation as it is based on implicit bias that further harms the Plaintiff."[4]

Brown's specific objections are as follows:

1) Plaintiff objects to any adjudication of this case by the Magistrate.

2) Plaintiff objects to the Magistrate's Factual Findings as the facts are misconstrued in a light that is not most favorable to Plaintiff and relevant facts are omitted.

3) Plaintiff objects to the Magistrate's Conclusions of Law based on biased facts in favor of Defendants, the moving parties, and untruths about Plaintiff's facts and arguments presented.

4) Plaintiff objects to the Magistrate's Finding that a reasonable jury could not find Cowan lacked reasonable suspicion or probable cause as the Magistrate has clearly improperly weighed the evidence, a function of a jury.

5) Plaintiff objects to the Magistrate's Finding that Plaintiff has not met his burden to show law enforcement had obvious reason to doubt the accuracy of the information reported and therefore Officer Cowan is entitled to qualified immunity.

6) Plaintiff objects to the Magistrate's finding that Henley and Cowan both defeat a malicious prosecution claim on a finding of probable cause as Magistrate is biased in the finding of facts, conclusion of law and legal findings based on

---

[4] Although Brown broadly objects "to the entire Report," this court conducts de novo review only of those portions of the magistrate judge's Report to which specific objections are made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Va. Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). Portions of the report for which no specific objection is raised are reviewed only for clear error. *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017) (stating that the court reviews portions of a magistrate judge's report and recommendation "to which only 'general and conclusory' objections have been made—for clear error") (quoting *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005)).

improper weighing of the evidence, misrepresentation of evidence and disregard of evidence.

7) Plaintiff objects the Magistrate's findings regarding the state law claims, as plaintiff has objected to the Magistrate's finding of probable cause, no ulterior purpose, acts outside the scope of proper conduct and foreseeability.

[ECF No. 50 at 6.] The court addresses these objections below.

## I.    Objection #1: Adjudication by the Magistrate Judge

Brown first objects to the magistrate judge's overarching "adjudication" of this matter. He argues that the magistrate judge should not have addressed the case for two reasons: (1) Brown objected to trial before a magistrate judge in the Rule 26(f) report, and (2) the magistrate judge's repeated mischaracterization of Brown as an "inmate" or "prisoner" has caused prejudice. *Id.* at 7. The court addresses these issues in turn.

### A.  Magistrate Judge Review

This objection is readily resolved. The magistrate judge did not adjudicate the pending motions for summary judgment. Rather, the magistrate judge issued a Report which carries no presumptive weight. Final decision-making authority rests solely with this court. *See Matthews v. Weber*, 423 U.S. 261 (1976).

Under 28 U.S.C. § 636(b)(1)(B), a district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A) . . . ." Motions for summary judgment fall within this designation. The court's referral of the matter to the magistrate judge was proper under this statute and Local Civil Rule 73.02(B)(4) (D.S.C.). The final determination on the motions is now properly before this court. Accordingly, this objection is overruled.

### B.  Mischaracterization of Brown as a "Prisoner" or "Inmate"

Brown next argues the magistrate judge improperly designated him as a "prisoner" or "inmate" and that this was damaging. [ECF No. 50 at 7.] Brown seems to imply this designation is evidence of bias that "can be seen throughout the [Report.]" *Id.*

The court first notes that the words "prisoner," "inmate," nor any other word alluding to present confinement are found in the Report. The magistrate judge does not state as fact or allude that Brown brought this suit in the capacity of a prisoner.[5] Rather, the civil docket for this case listed the "Nature of Suit" as being "550 Prisoner: Civil Rights." [ECF No. 50-1 at 1.] As Brown provides only speculation that this administrative discrepancy evidences "implicit bias in this case," this objection can be summarily overruled.

## II.    Objection #2: The Report's Factual Findings and Alleged Omission of Relevant Facts

Brown next objects to the magistrate judge's factual findings, asserting that the magistrate judge failed to consider several key facts which, if accepted as true, would create a genuine dispute of material fact and thus render summary judgment inappropriate. The court addresses the contested findings in turn.

### A.    Alleged Omission of Brown's Argument that Accusers Made Self-Serving Allegations

In his opposition to the motion for summary judgment, Brown alleges his accusers made several self-serving allegations.[6] He argues that this issue—the allegedly self-serving nature of

---

[5] Even if the magistrate judge had made such a designation, which she did not, it would be of little legal consequence. Plaintiffs, whether incarcerated or not, are entitled to equal treatment under the law, and this court reaches no legal conclusions based solely on a party's custodial status. *See Jones v. Metzger*, 456 F.2d 854, 856 (6th Cir. 1972) ("Prisoners are entitled to the same consideration afforded other civil rights litigants.").

[6] Brown claims that "[a] least 4 of Brown's accusers . . . filed lawsuits against RCRC and were rewarded for their bad faith actions with willing settlements by RCRC." [ECF No. 40 at 4.] He also indicates that Henley was "rewarded" for her testimony against him with a series of

their statements—constitutes a material fact that should have considered. [ECF No. 50 at 8.]

A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Contrary to Brown's position, the magistrate judge did consider this argument and concluded that these allegations were not relevant to the issues presented in the summary judgment motion. *See* ECF No. 46 at 14. (noting Brown's claims and concluding that these facts "are not relevant to the resolution of the instant pending motions").

This court agrees. Brown's claims about the alleged motivations of third parties—such as Henley's career interests or prior lawsuits involving non-party entities like RCRC—are not material to whether Officer Cowan had reasonable suspicion or probable cause on the day in question. These arguments, even if accepted as true, do not alter the legal analysis governing Brown's claims against the named Defendants. Accordingly, the magistrate judge correctly excluded these irrelevant allegations from consideration.

### B. Alleged Mischaracterization of the Timeline Involving Brown, Henley, and Officer Cowan

Brown also argues that the magistrate judge failed to properly consider the timeline of interactions between him, Henley, and Officer Cowan. [ECF No. 50 at 8.] Specifically, Brown alleges that there was insufficient time for Officer Cowan to have interviewed Henley and formed reasonable suspicion before stopping Brown and that a reasonable jury could conclude as much. [ECF No. 50 at 9.] The court disagrees.

The magistrate judge's report adequately addressed this issue by outlining the minimum

---

promotions, advancing from front desk clerk to Athletic Administrator, then to Tennis Coordinator, Property Management, and ultimately Park Superintendent—a position she has held for the past 2 years. *Id.*

information known to Officer Cowan at the time of the stop. As noted in the Report:

- In the previous 48 hours, Brown had been terminated from his post as RCRC Executive Director and indicted for misconduct in office.

- Brown knew that he was under an active criminal investigation by the FBI and had been indicted by a Richland County Grand Jury.

- Brown went to the Tennis Center for the express purpose of confronting Henley.

- Brown questioned Henley about her involvement in the FBI investigation and/or the criminal allegations in a confrontational and threatening manner.

[ECF No. 46 at 19.]

There is no constitutional requirement that some time elapse before an officer can form reasonable suspicion to justify an investigatory stop. *See United States v. Henderson*, 616 F. Supp. 3d 517, 522 n.7 (E.D. Va. 2022) ("The amount of time it takes to form a reasonable suspicion is not important so long as the officer truly did have a reasonable suspicion to stop the suspect."). Rather, the inquiry turns on whether the officer is "'able to point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity." *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)). The court finds that, consistent with the magistrate judge's analysis, the record establishes that Officer Cowan had sufficient, articulable facts to support an investigatory stop of Brown[7] Accordingly, the magistrate judge

---

[7] Brown claims "the Magistrate [sic] commits a biased error in accepting the time of the encounter as 8:30–9:38, instead of making a determination that a material fact is in dispute that could directly affect a finding of probable cause." [ECF No. 50 at 9.]

Setting aside Plaintiff's unfounded allegation of bias, his objection is contradicted by the Report itself. The Report correctly details the minimum information known to Officer Cowan at the time of the investigatory stop and notes that the proffered timeline is uncontradicted. [ECF No. 46 at 23 n.13. ("Although it appears much happened in a short period of time, there is no evidence in the record that what occurred could not have occurred on the timeline provided.").] Even viewing the record in the light most favorable to him, Plaintiff's objection fails.

properly considered and evaluated the evidence on this issue.

### C. Officer Cowan's Interview with Henley

Brown next argues that the magistrate judge erred by ignoring another genuine dispute of material fact—whether Officer Cowan interviewed Henley on the morning of her encounter with Brown. [ECF No. 50 at 9.] He claims that Henley affirmatively testified in her deposition that "she did not speak with Officer Cowen [sic] that day[,]" and claims the magistrate judge "disregards this very relevant fact that would determine the existence of probable cause." *Id.*

Brown's argument mischaracterizes the record. In her deposition—given eight years after the events in question—Henley testified "I can't recall speaking with [Officer Cowan.]" [ECF No. 41-2 at 22.] But a lack of recollection is not equivalent to an affirmative denial. When asked if it was possible that she spoke with Officer Cowan that day, Henley responded, "I'm not sure" and stated that if he had notes indicating such a conversation took place, she would have "no reason" to disagree. *Id.*

The magistrate judge expressly noted this in her Report. *See* ECF No. 46 at 5 n.6. ("Henley also testified that although she knew Officer Cowan, she did not recall speaking to him that day, but that she had no reason to doubt his notes that said they had spoken, and, if they had spoken, she would have told him what she told Robinson.") Furthermore, the magistrate judge did not rely on the existence or absence of a Cowan-Henley conversation in finding that reasonable suspicion existed to stop Brown. *Id.* at 19. Accordingly, the court finds no error in the magistrate judge's treatment of this evidence.

### D. Brown's Communications with Henley

Brown further objects to the magistrate judge's characterization of his statements to Henley at the RCRC complex. He notes that in recounting the events, the magistrate judge first cited

Dickerson's testimony that Brown stated, "Well I can't say nothing to you, but y'all need to leave Jeff alone." [ECF No. 50 at 10.] Later in the Report, the magistrate judge referred to the statement as "you better leave my brother Jeff alone." *Id.* Brown argues these two statements are materially different for purposes if a witness intimidation claim. *Id.*

If any nuance exists between these two versions of the statement, the court finds it immaterial. Thus, the magistrate judge's ultimate conclusions remain valid, and this objection is overruled.

### E.  Failure to Acknowledge Alleged Shifting Facts

Brown's final subpoint under his second objection is that the magistrate judge failed to recognize that "the facts of the encounter kept changing" creating a genuine dispute of material fact. [ECF No. 50 at 10.] He relies on a paragraph quoted from his opposition to Defendants' motion for summary judgment. *See* ECF No. 40 at 14.

If this is a specific objection it lacks merit. The magistrate judge acknowledged Brown's contention that Officer Cowan's account changed. [ECF No. 46 at 22.] However, the magistrate judge also correctly noted that the probable cause analysis is limited to the information available to the officer *at the time he sought an arrest warrant. See, e.g.*, *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) ("A court should only consider the information the officers had at the time they sought the warrant."); *Gilliam v. Sealey*, 932 F.3d 216, 234 (4th Cir. 2019) (requiring that courts "consider only the information the officers had at the time of the arrest").

Accordingly, the magistrate judge appropriately applied the governing legal standard, and this objection is overruled.

### III.   Objection #3: Alleged Bias in Favor of Defendants

#### A.   Omitted or Discounted Factual Assertions

Brown next argues that his claims were "discounted by the Magistrate [sic] and disregarded." [ECF No. 50 at 11.] He identified several facts he believes were improperly omitted from the magistrate judge's analysis:

- the purpose or reason behind Brown's conversation with Henley on the date at issue;

- the fact that staff at the RCRC "never [] informed Plaintiff that he could not return to the premises";

- the conflicting statements made by Henley, specifically regarding whether she feared Brown and her interview with Officer Cowan; and

- inconsistencies between the affidavits of Dickerson and Officer Cowan.

*Id.* at 11–12.

These objections are without merit. The magistrate judge either addressed these facts or correctly deemed them immaterial to the issues presented.[8] For instance, even accepting Brown's account of his motives or Henley's conflicting statements, these facts do not negate Officer Cowan's reasonable suspicion at the time of the stop or his probable cause at the time of the arrest. As discussed below, Defendants met their burden to show there is no genuine dispute of material fact, and they are entitled to judgment as a matter of law.

#### B.   Timeline Dispute and Alleged Failure to View Evidence in Light Most Favorable to Brown

---

[8] For example, even assuming Brown had a legitimate motive for his conversation with Henley, the content of that conversation was still reasonably suspected to be unlawful. Furthermore, even if RCRC staff did not expressly inform Brown that he was prohibited from returning to the tennis facility, Brown's perceived threats to Henley—and the subsequent phone calls to law enforcement by RCRC staff—remain unchanged. Finally, any conflicting statements or inconsistencies in Officer Cowan's report were addressed by the magistrate judge. *See supra* Section II.E.

Brown further contends that the magistrate judge failed to view the timeline of events in the light most favorable to him, as required at the summary judgment stage. He argues the magistrate judge should have accepted that the traffic stop occurred between 9:22 a.m. (as Dickerson allegedly stated) and 9:38 a.m. (based on the timestamp on Officer Cowan's photograph). Brown asserts this timeline is incompatible with a preceding interview between Officer Cowan and Henley, especially in light of Henley's testimony. [ECF No. 50 at 13.]

This argument fails. First, the court has addressed and rejected the premise that Henley affirmatively stated she did not speak with Officer Cowan. *See supra* Section II.C.

Second, Brown misrepresents the evidence. Dickerson stated that she called Officer Cowan "at approximately 9:22," not that the traffic stop began at that time. *See* ECF No. 38-4 at 8. Even assuming the call occurred at 9:22, Brown offers no evidence, beyond speculation, to suggest that the events that followed could not have occurred within the relevant timeframe.

While the court must view the facts in the light most favorable to the non-moving party, it need not adopt a version of events "blatantly contradicted by the record." *Scott v. Harris,* 550 U.S. 372, 380 (2009); *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). "When evidence differs substantially from the plaintiff's version of events, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Naylor v. Wash. Metro. Area Transit Auth.*, No. CV TJS-23-00730, 2024 WL 1721080, at *2 (D. Md. Apr. 22, 2024) (internal quotations omitted).

Here, the record supports the magistrate judge's conclusion: "Although it appears much happened in a short period of time, there is no evidence in the record that what occurred could not have occurred [in] the timeline provided." This is true even when viewing the evidence in the light most favorable to Brown. [ECF No. 50 at 23 n.13.] Accordingly, this objection is overruled.

IV.  **Objection #4: Reasonable Suspicion or Probable Cause**

Brown's fourth objection alleges "the [magistrate judge] carefully selected evidence in favor of Defendants that disregards the evidence presented by Plaintiff[.]" [ECF No. 50 at 14.] Brown argues:

> The [magistrate judge] determine[d] the officer was justified in a Terry Stop because she [] determined evidence of a reasonable articulable suspicion of criminal activity [existed.] Again, if the evidence in favor of Plaintiff is to be believed, then the officer performed a Terry Stop at 9:38 after being called at 9:22 and without speaking to the victim Henley who was allegedly the victim who was threatened.

*Id.*

Brown argues that Officer Cowan could not have had reasonable suspicion of criminal activity without first speaking with Henley. He further claims Officer Cowan's assertion that he interviewed Henley is contradicted by her testimony, just as Dickerson's timeline allegedly contradicts Officer Cowan's account. According to Brown, these inconsistencies create a genuine dispute of material fact as to whether Officer Cowan had a lawful basis to stop Brown. This objection is overruled for the same reasons discussed in connection with Brown's prior objections. As addressed above, the magistrate judge properly assessed only the evidence known to Officer Cowan at the time of the stop. [ECF No. 46 at 19.] The court agrees that Officer Cowan satisfied the standard for an investigatory stop as a matter of law. *See generally Terry v. Ohio*, 392 U.S. 1 (1968).

As to the alleged inconsistencies in the timeline, Brown has provided no evidence beyond conclusory allegations. He claims that events could not have occurred in the time stated but offers no factual or expert support for this assertion. [ECF No. 50 at 14.] Such speculation is insufficient, to withstand summary judgment. *See Brown v. Wal-Mart Stores E., L.P.*, No. CA 3:07-2943-JFA-JRM, 2009 WL 2940203, at *2 (D.S.C. Sept. 8, 2009) ("'Wholly speculative assertions will not

suffice' to create a genuine issue of material fact for the purposes of summary judgment.") (quoting *Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985)).

## V.    Objection #5: Qualified Immunity Findings

Brown next objects to the magistrate judge's finding that Officer Cowan is entitled to qualified immunity, arguing that several material facts remain in dispute. [ECF No. 50 at 14.] Specifically, Brown contends:

> [I]f the Magistrate [sic] properly considered all the facts, then there are relevant disputed material facts such as what the victim actually told the officer, when they can not [sic] agree on if they even spoke, and what is the proper timeline of the call and terry stop interaction, and whether information shared in the officer report and warrant omitted facts (such as the conversation about the brother Jeff which Defendant Henley and Plaintiff agree occurred and the fact that when Henley said she was a witness against Plaintiff he said "I cannot talk to you" and left!) and the fact that Henley was not deathly afraid and the fact that Henley boldly states she wanted Plaintiff arrested when she called HR before Plaintiff ever got out of his car.

*Id.*

As explained in the Report, the magistrate judge correctly limited the probable cause inquiry to the facts known to Officer Cowan at the time he sought the arrest warrant. *See Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 628 (4th Cir. 2007); *supra* Section II.E.

To defeat qualified immunity, a plaintiff must demonstrate that an officer's actions violated clearly established law. *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (*Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). In the context of an allegedly deficient warrant affidavit, the Fourth Circuit instructs that a court must examine a "corrected" affidavit—one that excludes falsehoods and includes any recklessly omitted material facts—to assess whether probable cause would still exist. If so, qualified immunity applies. *Miller*, 475 F.3d at 628 (citation omitted).

Here, the magistrate judge applied that standard and considered both the allegedly omitted

and misrepresented facts. She even removed certain statements "out of an abundance of caution" in favor of Brown. [ECF No. 46 at 25.] Thus, the court finds that the record supports the magistrate judge's finding of qualified immunity. This objection is overruled.

## VI.   Objection #6: Malicious Prosecution

Brown's sixth objection is that the magistrate judge failed to consider various factual disputes that, in his view, would negate a finding of probable cause. [ECF No. 50 at 18.][9] He argues that, when viewed in the light most favorable to him, his proffered evidence raises a question of fact as to whether the warrant was facially valid and supported by probable cause. *Id.* The court disagrees and finds the magistrate judge correctly resolved this issue.

### A.  Probable Cause for Arrest

Probable cause exists when the facts and circumstances known to the officer would warrant

---

[9] Brown realleges familiar arguments, alleging that the magistrate judge failed to consider contradictory or misrepresented facts, including:

> [C]ontradictory statements such as the timeline of events[,] whether or not Officer Cowen [sic] even spoke with the victim . . . misrepresentations of the facts such as the purpose of Plaintiff's visit, the comment about his brother and the fact that Plaintiff Dickerson and Defendant Henley all confirm that when Plaintiff asked Henley if she was cooperating with the police, Plaintiff abruptly ended the conversation and left.

[ECF No. 50 at 17.]

Brown argues:

> These are all the facts actually known to Cowen [sic] at the time he prepared his report to support a warrant. His report says Plaintiff was deathly afraid, which Plaintiff denies (along with even talking to Cowen) [sic.] Cowen's [sic] report omits that the conversation was about leaving his brother Jeff alone. Cowen's [sic] report omits that Plaintiff left as soon as Defendant said she was cooperating with the police. Cowen's [sic] report misrepresents the substance of the interaction and literally changes the story to make it more and more worse.

*Id.*

a prudent person to believe the suspect had committed or was committing an offense. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) It requires more than "bare suspicion" but less than evidence sufficient to convict. *Id.*

A claim for malicious prosecution under § 1983 is analyzed under the Fourth Amendment and requires a plaintiff to show that (1) the defendant caused (2) a seizure pursuant to legal process (3) unsupported by probable cause, and (4) the criminal proceeding terminated in plaintiff's favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) A finding of probable cause defeats such a claim. *See Somers v. Devine*, 132 F.4th 689, 697 (4th Cir. 2025) ("[T]he presence of probable cause defeats retaliatory arrest, unlawful arrest, and malicious prosecutions claims alike.") (citing *Nieves v. Bartlett*, 587 U.S. 391, 405–07 (2019)).

Even when viewing all facts in Brown's favor, the court agrees with the magistrate judge: Officer Cowan had sufficient information at the time of arrest to support a finding of probable cause as a matter of law. *See supra* Section II.B.[10] Accordingly, this objection is overruled.[11]

### B. Sufficiency of the Warrant

---

[10] Of note is the temporal proximity between Brown's termination, indictment, and later interaction with Henley. The magistrate judge correctly observed in her report that this timing was indicative of conduct consistent with the crime of witness intimidation. [ECF No. 46 at 19.]

[11] Brown contends that the magistrate judge "notes but does not even consider, Henley did not find Plaintiff's question about her cooperating with the government to be threatening." [ECF No. 50 at 18.] But even assuming this is accurate, it does not aid Brown's argument. While Henley said in her deposition that she did not find this specific remark threatening, she later confirmed that she did consider Brown's statement, "y'all better leave Jeff alone," to be threatening. *See* ECF No. 41-2 at 20. Moreover, the magistrate judge *did* consider this in the Report. *See* ECF No. 46 at 7 n. 9 (examining Henley's deposition); ECF No. 46 at 24 ("Even assuming the application of *Miller* and additional facts Plaintiff argues should or should not have been omitted, the 'corrected' warrant still would evidence the existence of probable cause . . . ."). Thus, Brown's argument is unpersuasive. The magistrate judge properly considered these facts when evaluating whether probable cause existed and did not err in her analysis.

To support a constitutional claim based on a facially deficient warrant, Brown must show that Officer Cowan made material misrepresentations or omissions with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 627 (4th Cir. 2007). Reckless disregard may be inferred when an officer had "serious doubts as to the truth of his statements" or ignored obvious reasons to question their accuracy. *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 556 (4th Cir. 2017).

Even assuming Officer Cowan's statement that Henley was "deathly afraid" was inaccurate, Brown offers no evidence that Officer Cowan seriously doubted that assertion or had reason to disbelieve it. The magistrate judge correctly applied the standard, and this objection is overruled.

**VII.  Objection #7: State-Law Claims**

Brown's seventh objection restates earlier arguments—that Officer Cowan and Henley acted with reckless disregard for the truth or included materially false statements in applying for the arrest warrant. [ECF No. 50 at 20.] He points to Officer Cowan's evolving narrative, alleged omissions in his report, and Henley's statement that she wanted Brown arrested.

The magistrate judge properly analyzed these claims under applicable standards. She modified her analysis to include or exclude certain facts in Brown's favor. [ECF No. 46 at 25.] After making those adjustments, she correctly concluded that the record supports a finding of probable cause. *Id.* at 24.

The court agrees with the magistrate judge's analysis and conclusion. When the record is viewed in the light most favorable to the Brown, it still supports the conclusion that probable cause existed at the time Officer Cowan applied for the warrant. Accordingly, this objection is also overruled.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the court finds no clear error in the Report. The court reviewed de novo the parts of the Report to which Brown's objections relate. The court hereby adopts the Report and Recommendation, ECF No. 46. As a result, Defendants' motions for summary judgment, ECF Nos. 36 and 37, are **GRANTED**. Brown's constitutional claims fail as a matter of law and are therefore dismissed **WITH PREJUDICE**.

**IT IS SO ORDERED.**

May 23, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge